Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 0878 | DATE | 8/23/2002 |
| CASE TITLE | THOMAS HAUGE vs. EQUISTAR CHEMICAL CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   The motion for summary judgment [7-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 26 2002 | 17 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/23/2002 | |
| | | date mailed notice | |
| CB | courtroom deputy's initials | PW | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS HAUGE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 0878 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| EQUISTAR CHEMICAL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Thomas Hauge sues Equistar Chemical Co. ("Equistar") for discrimination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Equistar moves for summary judgment.

## BACKGROUND

All facts are undisputed unless otherwise noted. Hauge was an Equistar maintenance technician. He was responsible for electrical and instrument inspection and repair work. Hauge worked in the ethylene maintenance group under the supervision of Jim Banks.

Hauge was reprimanded on May 7, 1998 for inattention to job responsibilities. Hauge did not agree with Equistar's reprimand, but signed the written reprimand form. On February 2, 1999, Hauge was provided a second reprimand with a one-day suspension for improperly issuing a work permit. Hauge was placed on a performance action plan, which required him to follow certain guidelines to improve his work productivity. On February 23, 1999, Hauge failed to submit a work permit. As a result, Hauge was placed on a "decision-making leave," which places an employee on temporary leave with pay to allow the employer and employee to reconsider the relationship. Hauge was placed on a one-day suspension from work with pay. He was required to answer various

1

17

questions about his commitment to the technician position. Under Equistar's decision-making leave policy, Equistar evaluated an employee's responses to determine whether to continue his employment. Equistar continued Hauge's employment after reviewing his responses.

In January 2000, Hauge was diagnosed with a fractured coccynx after an injury from sledding. He was not absent from work as a result of the injury. He received treatment for the fracture on several occasions. On July 25, 2000, he received treatment from Dr. Gary Koehn, his physician. On August 28, 2000, Hauge called his medical insurance company to find a surgeon within his plan network. The insurance company referred Hauge to Dr. Rezin. The next day, Hauge made an appointment with Dr. Rezin. Hauge reported to work and informed Banks that he was in pain. Hauge asked for permission to visit Dr. Rezin. Banks informed Hauge that he could not leave until all emergency work was completed. Hauge was responsible for fulfilling emergency work orders that day. He rescheduled his appointment for 10:30 a.m. Hauge raised the issue with Banks again, who denied permission to leave. Hauge was repairing a TT4808 converter, which was designated as an emergency work order. He then informed Pat Row, the temporary upgrade supervisor, and Dennis Watson, the operator, about his appointment. Hauge also contacted Joy Nixon at Equistar's human resources department. Hauge informed Nixon that Banks would not allow him to see Dr. Rezin. Nixon responded that she would investigate the situation. Hauge rescheduled his appointment for 12:00 p.m. After returning to speak with Banks, Banks informed Hauge he could leave if his operations team agreed with his temporary absence.

At 12:00 p.m., Hauge visited Dr. Rezin, who evaluated his suitability for surgery. Dr. Rezin did not provide Hauge with treatment for his pain. Hauge returned to work at 2:30 p.m. and attended a team meeting. On August 30, 2000, Bruce Raeburn, the ethylene division superintendent,

2

informed Banks he was displeased that Hauge had left his employment on August 29th without completing the emergency work order. Raeburn stated he heard Banks had attended a physician's appointment. However, Raeburn pointed out that Hauge had lost his work permit and did not complete the work order on August 29th. On August 31, 2000, Banks met with Hauge and related Raeburn's concerns. Hauge replied he had informed Row and Watson about his physician's appointment. Banks investigated the matter, and interviewed Watson, Row, and Hauge's team members. Banks concluded Hauge violated the terms of his decision-making leave and failed to obtain proper leave on August 29th. Specifically, Banks determined Hauge failed to inform his team members of the emergency job status, and failed to inform the customer of the interruption to the scheduled work order. Under Equistar's corrective action policy, Banks concluded Hauge must be terminated because he violated the terms of his decision-making leave. On September 6, 2000, Equistar terminated Hauge's employment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material

3

fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). If the moving party meets this burden, the nonmovant must then respond by offering specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e).

## II.   FMLA retaliation claim

The FMLA provides eligible employees with 12 weeks of unpaid leave during any 12-month period. 29 U.S.C. § 2612. An employee must provide notice to an employer that he intends to take FMLA leave. 29 U.S.C. § 2612(e)(2). The FMLA prohibits employers from discriminating against employees for asserting rights under the Act. 29 U.S.C. § 2615(a)(1). To prove an FMLA retaliation claim, Hauge chooses to proceed under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See King v. Preferred Tech. Gp*, 166 F.3d 887, 892 (7th Cir. 1999) (*McDonnell Douglas* approach applies to indirect evidence of FMLA retaliation). Under this framework, the plaintiff must establish a *prima facie* case of retaliation: (1) the plaintiff participated in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there is a causal connection between the protected activity and the adverse action. *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a nondiscriminatory reason for the adverse action. The plaintiff must then prove the proffered explanation is a pretext for discrimination. *Id.* at 892-93.

### A.   *Prima Facie* Case

It is undisputed Hauge's termination is an adverse employment action. Hauge's absence was investigated two days after he visited Dr. Rezin, and he was terminated as a result of the

4

investigation. *See King*, 166 F.3d at 893 (temporal proximity is sufficient to create a genuine factual dispute about a causal connection). Equistar contends Hauge cannot establish a *prima facie* case because he did not engage in FMLA protected activity.

The FMLA allows leave for employees that suffer from a "serious health related condition." 29 U.S.C. § 2612(a)(1)(D). An employee is expected to provide 30 days advance notice to the employer stating the reasons for the leave and the expected duration. *See* 29 C.F.R. § 825.302(a)-(c). If advance notice is not possible due to emergency or unforseen circumstances, adequate notice must be given "as soon as practicable." 29 C.F.R. § 825.302(b). Employers are entitled to adequate notice that informs them the employee's FMLA rights are applicable. *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001).

Equistar argues Hauge failed to provide adequate and timely notice of his absence under the FMLA. *See Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (notice to the employer must be both adequate and timely). Hauge fails to respond. In *Collins*, the Seventh Circuit held an employee's reference to being "sick" could not trigger the FMLA's notice requirement as a matter of law. The court held the employee failed to provide sufficient information to the employer of a serious health condition. 272 F.3d at 1008-1009. The court determined the plaintiff was required to inform her employer of the nature and severity of the illness under the FMLA. *Id.*

It is undisputed Hauge only told Banks he was "in pain from his tailbone." Pl. 56.1 Facts, Hauge Dep. at p. 90. Hauge did not provide further information about his condition before he left Equistar for Dr. Rezin's appointment. *See Kramarski v. Village of Orland Park*, No. 00 C 2487, 2002 WL 1827637, at *18 (N.D. Ill. Aug. 9, 2002) ("calling in sick" was insufficient notice under the FMLA). Similar to *Collins*, Hauge did not convey the severity of the condition or the nature of

5

his medical problem. 272 F.3d at 1009. Hauge did not identify his pain as an emergency medical condition or inform Equistar he could not continue working that day. *See e.g. Price v. City of Fort Wayne*, 117 F.3d 1022, 1025 (7th Cir. 1997) (a request for medical leave, accompanied by a physician's note requiring the plaintiff to take time off, was sufficient notice to an employer).

Further, "the FMLA does not provide for leave on short notice when longer notice readily could have been given." *Gilliam v. United Parcel Serv.*, 233 F.3d 969, 971 (7th Cir. 2000). Ordinarily, the FMLA requires an employee to provide 30-days advance notice. 29 U.S.C. § 2612(e)(1). Notice is required "as soon as practicable," meaning "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). "This ordinarily ... mean[s] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." *Id.* Hauge's previous visit to a physician was on July 25, 2000, one month before he scheduled an appointment with Dr. Rezin. Pl. 56.1 Facts at ¶ 1. Hauge had not visited Dr. Rezin for treatment before August 29, 2000. Indeed, Hauge telephoned his medical insurance company on August 28th, and inquired about a surgeon within the provider network of his medical insurance plan. Def. 56.1 Facts at ¶ 39. His insurance company referred him to Dr. Rezin. *Id.* Hauge then called Dr. Rezin on August 29th and scheduled an appointment for that morning. *Id.* at 40. Hauge did not inform Equistar of his appointment until the morning of the appointment. He fails to explain his need to visit a surgeon without advance notice to Equistar. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (the FMLA is triggered by a request for foreseeable or emergency leave). Hauge contends his pain constituted a medical emergency. Although Hauge complained about pain, he did not visit his treating physician or the emergency room. Dr. Rezin evaluated his potential for surgery

only. Indeed, Hauge was examined by Dr. Rezin at 12:00 p.m., and he returned to work by 2:30 p.m. for the remainder of the day. *Id.* at ¶ 70. He returned to work the following two days until his suspension. Consequently, he fails to offer evidence he suffered from an emergency medical condition.

The FMLA does not provide an employee with the right to take unscheduled, predictable absences at a moment's notice. *Collins*, 272 F.3d at 1007. "Notice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help." *Gilliam*, 233 F.3d at 971. Viewed in the light most favorable to Hauge, he fails to create a genuine factual dispute that he provided Equistar with sufficient and timely notice of a serious health condition under the FMLA. As a matter of law, Hauge fails to establish a *prima facie* case of FMLA retaliation.

### B. Pretext

Even if Hauge could establish a *prima facie* case, he cannot demonstrate Equistar's proffered legitimate, non-discriminatory reason for his termination was pretextual. "A pretext, in employment law, is a phony reason that the employer offers for engaging in discriminatory conduct." *Mills v. First Fed'l Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996) (internal quotations omitted). The wisdom of the employer's decision is not at issue; the genuineness of the employer's motives is significant. *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 304 (7th Cir. 1996). A plaintiff can demonstrate an employer's proffered reason is pretextual: "(1) by showing that a discriminatory reason more likely than not motivated the employer"; or (2) "that the employer's proffered explanation is unworthy of credence." *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). A proffered reason cannot be pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." *King*, 166 F.3d at 893.

7

Equistar offers evidence that Banks terminated Hauge because he failed to inform his team members about the status of the emergency work order, and retain another employee to continue work on the project while he was at Dr. Rezin's office. Def. 56.1 Facts at ¶¶ 85-90. Banks conducted an investigation, and interviewed Row and Watson. *Id.* at ¶ 85. According to Banks, both interviews confirmed Hauge did not report on the status of the emergency work order before leaving, or inform his team whether the repairs were complete. *Id.* at ¶ 90. Hauge had received two prior written reprimands, a performance action plan, and a decision-making leave. *Id.* at ¶¶ 10, 15, 19, 23. Under Equistar's employee policy, Hauge's termination was a valid employee action. *Id.*, Banks Decl. at ¶ 8. Hence, Equistar proffers a legitimate, non-discriminatory reason for Hauge's termination.

In response, Hauge offers evidence that he informed Watson and Row about the status of the work order, and Watson agreed that Hauge could leave the plant to visit Dr. Rezin. Def. 56.1 Facts at ¶ 60. Watson denies granting permission to Hauge to leave the plant. *Id.* at ¶ 80. Hauge claims Nixon allowed Hauge to leave the plant. Pl. 56.1 Facts, Hauge Dep. at p. 112. Nixon denies informing Hauge he could leave. *Id.*, Nixon Dep. at p. 28. It is undisputed Row allowed Hauge to leave work that evening without completing the emergency work assignment. Def. 56.1 Facts at ¶ 75. On that basis, Hauge argues Banks' reasons for his termination are pretextual, and genuine factual disputes preclude summary judgment.

Hauge's argument on pretext is legally flawed. He argues Banks terminated his employment because he needed a "scapegoat." He contends Banks was afraid of being reprimanded by Raeburn for allowing him to leave for a physician's appointment. Further, Hauge argues Banks discounted the importance of the emergency work order by requiring Hauge to attend a team meeting

immediately after he returned from Dr. Rezin's office. Def. 56.1 Facts at ¶ 70. According to Hauge, Banks was concerned Raeburn would blame him for not completing the emergency work order. Hauge argues Banks fabricated Equistar's proffered legitimate, non-discriminatory reason for his termination to save himself from Raeburn's discontentment.[1]

Even if Hauge's assertions are true, Bank's termination of Hauge on those grounds does not constitute retaliation under the FMLA. *See Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (terminating an employee because he is a "scapegoat" is a non-discriminatory employment decision). To establish pretext, Hauge must attribute a retaliatory animus to Banks, the decision-maker. Hauge offers no proof that his termination was in direct retaliation for taking a two-hour leave of absence. Instead, Hauge advances evidence to establish that Banks terminated his employment to save his own position. Viewed in the light most favorable to Hauge, he fails to create a genuine factual dispute that Equistar's proffered reasons for his termination were a pretext for retaliation. Accordingly, summary judgment is warranted on Hauge's FMLA retaliation claim.

## CONCLUSION

The motion for summary judgment is granted.

August 23, 2002

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

---

[1] For example, Hauge argues "Banks took steps necessary to protect his position," and "Banks, rebuked by Raeburn for discounting the importance of the TI4808 job, and, most importantly, for letting Plaintiff leave the plant while it remained unrepaired, took the action he needed to take. That action included terminating Plaintiff." Pl. Resp. at 12-13.

9